IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JEREMY NATHANIEL WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 120-060 |
| | ) | |
| OFFICER WARREN; OFFICER LANE; | ) | |
| WARDEN OF SECURITY HARVEY; | ) | |
| WARDEN EDWARD PHILBIN; WARDEN | ) | |
| SHELDON; MS. HARRIS, Unit Manager; | ) | |
| MS. BROWN, Unit Manager; | ) | |
| MS. HARMOND, Unit Manager; | ) | |
| SHOWDEN, Unit Manager; LT. JACKSON; | ) | |
| LT. JORDAN; SGT. ROSS; SGT. McGEE; | ) | |
| OFFICER FOLKS; OFFICER COLE; | ) | |
| MS. SIM; NURSE JOHNSON; MR. SMITH; | ) | |
| TAYLOR; and MS. BIRCH, Mental Health | ) | |
| Counselor, | ) | |
| | ) | |
| Defendants.[1] | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, incarcerated at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case brought pursuant to 42 U.S.C. § 1983. Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

---

[1]The Court **DIRECTS** the **CLERK** to update the list of Defendants on the docket in accordance with the caption of this Report and Recommendation, which is consistent with the amended complaint. (Doc. no. 21, pp. 12-15.)

**I.     BACKGROUND**

On July 17, 2020, the Court dismissed Plaintiff's claims against Defendants Warden Philbin, Lt. Jordan, Sgt. McGee, and Warden Harvey for failure to state a claim upon which relief may be granted and dismissed those Defendants from this case. (Doc. no. 12.) The Court allowed to proceed Plaintiff's claim for excessive force against Officers Warren and Lane. (Doc. no. 10.) On September 17, 2020 Officers Warren and Lane waived service of process and filed an answer to Plaintiff's complaint. (Doc. nos. 15-17.) On October 21, 2020, Plaintiff timely filed an amended complaint in accordance with the timelines set forth in the September 17, 2020 Scheduling Notice. (Doc. no. 21.)

Upon conducting an initial screening of Plaintiff's amended complaint, the Court ordered Plaintiff to notify the Court which claims he wished to pursue within fourteen days of the December 29, 2020 Order. (Doc. no. 23.) Alternately, the Court informed Plaintiff he may withdraw his amended complaint by this same deadline. (Id.) In particular, the amended complaint did not satisfy the dictates of Fed. R. Civ. P. 20 in that Plaintiff included a plethora of unrelated claims with no relation to the original February 26, 2020 assault, including for example access to the law library, telephone privileges, and denial of his property. (See generally doc. no. 21.)

The time to respond has passed, and Plaintiff has not informed the Court which claims he wishes to pursue.

**II.    Amended Complaint Allegations**

Plaintiff names as Defendants: (1) Officer Warren; (2) Officer Lane; (3) Lt. Jordan; (4) Warden of Security Harvey; (5) Warden Edward Philbin; (6) Warden Sheldon; (7) Unit Manager Harris; (8) Unit Manager Brown; (9) Unit Manager Harmond; (10) Unit Manager Showden; (11)

Lt. Jackson; (12) Sgt. Ross; (13) Sgt. McGee; (14) Officer Folks; (15) Officer Cole; (16) Ms. Sim; (17) Nurse Johnson; (18) Mr. Smith; (19) Taylor; and (20) and Ms. Birch, Mental Health Counselor. (Doc. no. 21, pp. 12-15.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On February 26, 2020, Lt. Jordan made rounds in Plaintiff's dorm. (Id. at 12.) Five minutes later, Officers Warren and Lane punched, kicked, and assaulted Plaintiff with a flashlight, rubbed Plaintiff's face against the concrete, and pepper-sprayed Plaintiff in his cell. (Id.) Officers Warren and Lane refused Plaintiff medical attention for two hours before Lt. Jordan escorted him to medical. (Id.) After the February 26th incident, Plaintiff generally alleges he "was harassed and den[ied] morning food trays" and pressured by gang members to drop grievances filed against Officers Warren and Lane. (Id.) Plaintiff filed numerous grievances concerning Officers Warren and Lane still working Plaintiff's unit, generalized allegations of mistreatment, and Lt. Jordan and Unit Manager Showden's failure to protect Plaintiff from Officers Warren and Lane by allowing them to continue working in Plaintiff's unit. (Id.)

On March 5, 2020, Plaintiff attempted suicide because of Officers Warren and Lane's harassment and Unit Manager Brown placing Plaintiff on lockdown for requesting camera footage of the February 26th incident. (Id. at 12-13.) Warden of Security Harvey, Unit Manager Brown, Sgt. McGee, and Mental Health Unit Manager Mayo responded to Plaintiff's suicide attempt and Plaintiff informed them he feared for his life because the February 26th incident was not being investigated and Officers Warren and Lane still worked his unit. (Id. at 13.) A few weeks later, Plaintiff cut himself three times and was stabbed. (Id.)

3

On March 20, 2020, a mental health counselor sent Plaintiff to the Crisis Stabilization Unit ("CSU") because of emotional distress caused by the February 26th incident. (Id.) On March 31, 2020, Plaintiff was kicked out of CSU after he wrote a statement explaining why he feared for his life. (Id.) Plaintiff refused to move and began cutting himself, and put blood over the window in front of Mental Health Counselor Ms. Birch. (Id.) Prison staff told CERT team members to record Plaintiff and take him to medical. (Id.) Plaintiff banged his head on the way to medical and once he arrived in the medical unit, Defendant Taylor was instructed to stop recording Plaintiff. (Id.) Once Defendant Taylor stopped recording Plaintiff, Defendant Smith "jumped on" Plaintiff in retaliation of Plaintiff filing a pending lawsuit against him and Unit Manager Harris. (Id. at 13-14.) Sgt. Ross, Unit Manager Harris, and Sgt. McGee watched the abuse and did not intervene. (Id. at 14.) Plaintiff was strapped to a chair and removed to the same unit where the February 26th incident occurred. (Id.)

Once in the cell, Unit Manager Brown instructed Sgt. Ross and Defendant Smith to remove everything from Plaintiff's cell because "y'all know that crazy [expletive] gone try [and] hurt himself." (Id. at 14.) Plaintiff cut himself once he was alone in the cell in hopes of receiving help. (Id.) Thirty minutes later, Sgt. Ross and Defendant Smith returned with Nurse Johnson. (Id.) Defendants Sgt. Ross, Smith, and Nurse Johnson told Plaintiff they would not continue taking Plaintiff to medical "for doing this dumb [expletive]." (Id.) Nurse Johnson wrapped Plaintiff's arm and he was placed back in his cell. (Id.) Plaintiff alleges his cell was pepper sprayed during the time in which he received medical attention, which caused difficulty breathing. (Id.) Plaintiff does not identify the individual responsible for pepper spraying the cell. Plaintiff cut himself again and tied a rope around his neck in front of Officers Folks and

Cole. (Id.) Unit Manager Harmond responded to the scene and told Lt. Jackson what course of action she wanted to pursue. (Id.) No action was taken until an hour later. (Id.)

Defendants Sgt. Ross and Smith escorted Plaintiff to medical and mental health was not informed of the March 31st suicidal incident. (Id. at 14.) Plaintiff was taken to CSU for twenty-one days with no mat, blanket, or jumpsuit. (Id.) Each time Plaintiff questioned Warden Philbin and Unit Manager Harris as to why he was placed in the strip cell, they both responded, "that's what [Plaintiff] get." (Id. at 14.) Mental health was never informed of the March 31st incident. (Id.)

Since the February 26th incident and the filing of Plaintiff's original complaint, Plaintiff has been stabbed, hospitalized, and attacked by inmates while housed in the lockdown unit. (Id.) Plaintiff has been denied access to the law library, phone usage, and legal property because he continues to file grievances and lawsuits. (Id.) Warden Sheldon, Warden Philbin, Unit Manager Brown, and Defendant Sim are aware of these occurrences and responsible for the incidents taking place. (Id.)

For relief, Plaintiff requests monetary damages and criminal charges. (Id. at 16.)

## III.   DISCUSSION

### A.   Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson

5

v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

The court affords a liberal construction to a pro se litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the court has a duty to re-write the amended complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B.   Plaintiff's Claims are Improperly Joined Under Rule 20

Plaintiff's claims involve a running litany of various incidents with no relation to the

February 26, 2020 original assault, including for example access to the law library, telephone privileges, and denial of his property.  Plaintiff cannot bring unrelated claims in a single lawsuit under Fed. R. Civ. P. 20.  There are two requirements for joinder under Rule 20:  (1) all claims against joined defendants must arise out of "the same transaction or occurrence, or series of transactions or occurrences"; and (2) "there must be some question of law or fact common to all defendants that will arise in the action."  Smith v. Trans-Siberian Orchestra, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by* Manders v. Lee, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003) (*en banc*).).  "In determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts have looked for meaning to Fed. R. Civ. P. 13(a) governing compulsory counterclaims."  Alexander, 207 F.3d at 1323.  Under the requirements of Rule 13(a), "a claim arises out of the same transaction or occurrence if there is a logical relationship between the claims."  Construction Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 n.6 (11th Cir. 1998); Tarver v. Owens, 5:14-CV-214, 2014 WL 3810594, at *4 (M.D. Ga. Aug. 1, 2014) (same).  A logical relationship exists when the claims depend upon the same set of facts, or the facts of one claim "activate additional legal rights supporting the other claim."  Smith, 728 F. Supp. 2d at 1319.  A claim may be dismissed without prejudice where it does not comply with Rule 20.  Smith v. Owens, 625 F. App'x 924, 928-29 (11th Cir. 2015.)

Plaintiff has not alleged any facts connecting the alleged assault on February 26, 2020 to the new claims raised in the amended complaint concerning events occurring after February 26, 2020, except for the claim that, on March 5, 2020, Unit Manager Brown retaliated against Plaintiff for seeking evidence concerning the assault.  Accordingly, all

7

claims asserted in the amended complaint should be dismissed except for (1) the original excessive force claim against Defendants Warren and Lane; and (2) the new claim alleging retaliation by Unit Manager Brown on March 5, 2020.

### C. Plaintiff's Motion for Preliminary Injunction

On October 21, 2020, Plaintiff filed what is titled "Memorandum of Law" and "Declaration in Support of Preliminary Injunction," which the Court liberally construes as a motion for preliminary injunction. (Doc. nos. 20, 20-1.) Plaintiff repeats the same factual allegations from his amended complaint and asserts his allegations clearly show he is being retaliated against and forced to live in fear. (Id.)

A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson Cty., 720 F.2d 1511, 1519 (11th Cir. 1983)).

Plaintiff has not met his burden of persuasion as to all four of these requirements. First, Plaintiff has not shown a likelihood of success on the merits because the amended complaint allegations clearly show the only immediate threat of irreparable harm to Plaintiff is himself. Indeed, he regularly harms himself and has attempted suicide. Second, Plaintiff has failed to

establish he will suffer irreparable injury if the injunction is not granted.  In order to satisfy the irreparable injury requirement, Plaintiff must show the threat of injury is "neither remote nor speculative, but actual and imminent."  Northeastern Fla. Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (citation omitted); see also Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (noting that, in order to obtain injunctive relief, a plaintiff must show "a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury.").  Plaintiff merely alleges some harm might come to him because Officers Warren and Lane still work near him at ASMP, which is too speculative and remote.

Third, Plaintiff also fails to address whether the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party and whether if issued, the injunction would be adverse to the public interest.  Simply put, the law is well settled that federal courts should refrain from unwarranted interference in the day-to-day operations of prisons.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).  To the extent Plaintiff requests prison officials be ordered not to retaliate against him, it is clearly established that retaliating against an inmate for filing a lawsuit is unconstitutional.  See Williams v. Brown, 347 F. App'x 429, 435-36 (11th Cir. 2009); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986).  Thus, an order prohibiting any staff member at ASMP from retaliating against Plaintiff would serve little purpose, as it would amount to nothing more than an instruction to "obey the law."  See Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) (refusing to issue order which would amount to broad instruction to simply "obey the law").

For these reasons, Plaintiff's request for injunctive relief should be denied.

9

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** all claims asserted in the amended complaint be **DISMISSED** for failure to state a claim except for (1) the original excessive force claim against Defendants Warren and Lane; and (2) the new claim alleging retaliation by Unit Manager Brown on March 5, 2020; Defendants Lt. Jordan, Warden of Security Harvey, Warden Philbin, Warden Sheldon, Unit Manager Harmond, Unit Manager Showden, Lt. Jackson, Officer Folks, Officer Cole, Sim, Nurse Johnson, Taylor, and Birch be **DISMISSED** from this case; and Plaintiff's motion for preliminary injunction be **DENIED**, (doc. no. 20).  In a companion Order, the Court allows to proceed Plaintiff's claims for retaliation against Unit Manager Brown and excessive force against Officers Warren and Lane.  Officers Warren and Lane shall have thirty days from the date of this Order, within which to answer, move, or otherwise respond to Plaintiff's amended complaint, (doc. no. 21), with respect to the excessive force claim arising from the February 26, 2020 assault.

SO REPORTED and RECOMMENDED this 5th day of February, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA