IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JEREMY NATHANIEL WILLIAMS,        )
                                                          )
            Plaintiff,                              )
                                                          )
      v.                                               )          CV 120-060
                                                          )
OFFICER J'KOLBY WARREN; OFFICER   )
RONNY LANE; and CLIFFORD BROWN,   )
Unit Manager,                              )
                                                          )
            Defendants.[1]                      )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is

proceeding *pro se* and *in forma pauperis* ("IFP") in this case brought pursuant to 42 U.S.C.

§ 1983.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS**

Defendants' motion for summary judgment be **GRANTED**, (doc. no. 28), a final judgment be

**ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

I.      **PROCEDURAL BACKGROUND**

Plaintiff initially named six Defendants, and because he is proceeding IFP, the Court

screened the complaint.  (See doc. nos. 1, 8.)  Without objection from Plaintiff, Chief United

States District Judge J. Randall Hall dismissed four Defendants and allowed an Eighth

Amendment excessive force claim to proceed against Officers Warren and Lane.  (Doc. no.

_____

[1]The Court **DIRECTS** the **CLERK** to update Officers Warren and Lane names on the
docket in accordance with the above caption, which is consistent with their motion for summary
judgment.  (Doc. no. 28-1, p. 1.)

12.)  On October 21, 2020, Plaintiff timely filed an amended complaint in accordance with the timelines set forth in the September 17, 2020 Scheduling Notice.  (Doc. no. 21.)  Upon conducting an initial screening of Plaintiff's amended complaint, the Court ordered Plaintiff to notify the Court which claims he wished to pursue.  (Doc. no. 23.)  Alternately, the Court informed Plaintiff he may withdraw his amended complaint.  (Id.)  Plaintiff failed to respond to the Court's Order, and on March 10, 2021, the Court dismissed all claims in the amended complaint for improper joinder under Fed. R. Civ. P. 20, except for Plaintiff's (1) original excessive force against Defendants Warren and Lane; and (2) the new claim alleging retaliation by Unit Manager Brown on March 5, 2020.  (Doc. no. 36.)  On March 9, 2021, Defendant Brown filed a motion to dismiss, arguing Plaintiff failed to exhaust his administrative remedies as to the claims against him prior to filing the amended complaint.  (Doc. no. 33.)  On June 9, 2021, the Court granted Defendant Brown's motion to dismiss, and dismissed him from this case. (Doc. no. 43.)  Therefore, the only remaining claim before the Court is Plaintiff's original excessive force claim against Defendants Warren and Lane where Plaintiff alleges they assaulted and pepper-sprayed him and refused medical attention for two to three hours.

Defendants Warren and Lane filed a motion for summary judgment on March 3, 2021. (Doc. no. 28.)   Because Plaintiff did not respond to Defendants' motion for summary judgment, it is deemed unopposed.  Loc. R. 7.5.  Similarly, because Plaintiff did not satisfy Local Rule 56.1 by filing a response to Defendants' Statement of Material Facts, all facts proffered by Defendants having evidentiary support in the record are hereby deemed admitted. See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid

objections); <u>Scoggins v. Arrow Trucking Co.</u>, 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (deeming admitted all unopposed fact statements supported by evidentiary materials of record).  However, Plaintiff's lack of a response does not automatically entitle Defendants to summary judgment because as movants, they continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." <u>Reese v. Herbert</u>, 527 F.3d 1253, 1268 (11th Cir. 2008); <u>see also</u> <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1303 (11th Cir. 2009).  Thus, the Court will review the record "to determine if there is, indeed, no genuine issue of material fact."  <u>Mann</u>, 588 F.3d at 1303.

## II.    FACTS

### A.    Undisputed Facts

On February 26, 2020, Officer Warren was assigned to dormitory 11-B and, at approximately 10:30 p.m., the Control Booth Officer in 11-B informed him Plaintiff had exited his cell and approached the control booth.  (Warren Aff., doc. no. 28-6, ¶ 3.)  When Officer Warren approached, Plaintiff was inside the cell with the door closed and his arm extended out of the open tray flap.  (<u>Id.</u>)  While Plaintiff's cell door was visibly closed, Officer Warren could not determine whether it was locked.  (<u>Id.</u>)  Officer Warren gave Plaintiff several direct orders to remove his arm from the open tray flap to secure Plaintiff in his cell, but Plaintiff refused to comply.  (<u>Id.</u>)  Officer Warren asked Officer Lane to assist with securing Plaintiff's cell, but despite orders from both officers, Plaintiff still refused to remove his arm from the open tray flap.[2]  (<u>Id.</u>)  Plaintiff then, without warning, opened his cell door and exited into the dorm

---

[2]Officers Warren and Lane submitted affidavits in support of their motion for summary judgment, and as they both used force in the same situation, both affidavits are substantially similar in form.  For the sake of brevity, when the same or substantially similar factual statements are contained in more than one affidavit, the Court will cite to only one as a demonstrative example

hallway.  (Id. ¶ 4.)

Because Plaintiff posed an immediate danger to Officers Warren and Lane, as well as others within the prison, Officers Warren and Lane immediately grabbed Plaintiff to place him back in his cell.  (Id.)  Officer Warren secured the top half of Plaintiff's body and Officer Lane secured the bottom half of Plaintiff's body, placing him face down on the floor of his cell.  (Id.) While Officer Warren continued to secure Plaintiff on the floor of his cell, Officer Lane removed a piece of cardboard Plaintiff previously jammed into his cell door to make it falsely appear locked and secured.  (Id.)  It took less than one minute to secure Plaintiff in his cell. (Id.)  Officers Warren and Lane assert they did not beat, kick, punch, or slam Plaintiff to the floor, or use Oleoresin Capsicum ("pepper spray") on him, nor did they sexually assault him in any way.

After securing Plaintiff, Officers Warren and Lane notified their supervisor, Lt. Kimmie Jordan, of the use of force.  (Id. ¶ 6.)  The use of force occurred at approximately 10:45 p.m., but because there is a mandatory headcount every night at midnight and a supervisor is needed to accompany an inmate to the use-of-force examination, Plaintiff was escorted to medical by Officer Warren and Lt. Jordan for a use-of-force examination less than two hours later at approximately 12:25 a.m.  (Id.)

There is no video footage of the use of force incident, however, there are two videos showing Plaintiff being escorted to and from the medical department respectively.  (See Warren Aff., Exs. A ("Video 1") and B ("Video 2".)  Video 1 does not provide any objective evidence showing Plaintiff was pepper sprayed or excessively beaten by Officers Warren and

---

in support of the noted proposition.

Lane.  Video 1 shows Plaintiff exiting his cell with various superficial abrasions across his forehead and left cheek.  (Video 1, 1:15.)  Plaintiff does not appear to have red, teary eyes as is normally seen after the use of pepper spray, or any signs of bleeding, nor trouble walking. (See generally Video 1.)

**B.     Plaintiff's Medical Records**

Physicians' Assistant ("PA") Sonya Holston performed a use of force assessment on Plaintiff, finding multiple abrasions on Plaintiff's forehead and two abrasions on his left hip, but no injuries on his head/neck, trunk or abdomen.  (Alston Aff., doc. no. 28-4, ¶ 4.)  PA Holston performed a visual inspection of Plaintiff's genitals found no bruising or acute lesions on his buttocks that would indicate sexual abuse.  (Id.)  PA Holston prescribed Tylenol 650 mg and Bacitracin, a topical antibiotic ointment, to treat his injuries.  (Alston Aff., ¶ 4; doc. no. 28-5, Ex. A.)

When reviewing Plaintiff's medical records, Dr. Alston did not find any indication Plaintiff had been pepper sprayed.  (Alston Aff., ¶ 4.)  In addition, Dr. Alston viewed Video 1 and did not see any objective evidence Plaintiff was pepper sprayed, in that "[Plaintiff] exhibited no coughing or irritation, tearing or redness to the eyes as is nearly always seen after the use of [pepper spray]."  (Alston Aff., ¶ 5.)  Furthermore, after viewing the close up of Plaintiff's forehead at the 11:00 mark of Video 1, Dr. Alston described his forehead/facial abrasions as very minor skin abrasions and agreed with PA Holston's treatment of a mild pain reliever and topical antibiotic ointment.  (Id.)  Plaintiff was escorted to the ASMP medical department on March 5, March 9, March 19, March 20, and March 25, 2020, but at no point did he request or receive any follow-up treatment from the February 26th use of force.  (Alston Aff., ¶¶ 6-10; doc. no. 28-6, Exs. C-H.)

5

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608.  The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56.  "The evidence of the non-movant is

to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.

**B.      Defendants Are Entitled to Summary Judgment**

Defendants contend the undisputed material facts establish they are entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claims, they are entitled to qualified immunity and Eleventh Amendment immunity, and should the case proceed to trial, Plaintiff is limited to nominal damages because his alleged physical injuries are *de minimis*.  (Doc. no. 28-1.)  Despite detailed warnings pursuant to Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), of the consequences of failing to respond as required by the Federal Rules of Civil Procedure and Eleventh Circuit case law, (see doc. no. 24), Plaintiff failed to submit any response to Defendants' dispositive motion.

**1.      Overview of Excessive Force Legal Landscape**

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation.  Id.  *De minimi*s uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if

it "may later seem unnecessary in the peace of a judge's chambers . . . ."  Id. at 9 (citation

omitted).  However, because injury and force are imperfectly correlated and it is the force used

that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue

an excessive force claim merely because he has the good fortune to escape without serious

injury."  Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and

wanton infliction of pain.  See Whitley v. Albers, 475 U.S. 312, 319 (1986).  That is,

> [F]orce does not violate the Eighth Amendment merely because it is
> unreasonable or unnecessary:  "The infliction of pain in the course of a prison
> security measure . . . does not amount to cruel and unusual punishment simply
> because it may appear in retrospect that the degree of force authorized or applied
> for security purposes was unreasonable, and hence unnecessary in the strict
> sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319).  Rather, the Court must

consider "'whether force was applied in a good-faith effort to maintain or restore discipline,

or maliciously and sadistically to cause harm.'"  Harris v. Chapman, 97 F.3d 499, 505 (11th

Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the

summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over
> the reasonableness of a particular use of force or the existence of arguably
> superior alternatives.  Unless it appears that the evidence, viewed in the light
> most favorable to the plaintiff, will support *a reliable inference of wantonness*
> *in the infliction of pain* under the standard we have described, the case should
> not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322).

Because the subjective component is contextual, courts consider the following factors:

(1) extent of injury, (2) need for application of force, (3) relationship between need and amount

8

of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375.  Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security.  Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*).  For example, use of an appropriate degree of force to compel compliance with a valid order is justified.  Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

> **2.     Officers Warren and Lane are Entitled to Summary Judgment Because the Force Used Was a Good Faith Effort to Restore Order, Not Maliciously and Sadistically to Cause Harm**

Consideration of the multiple factors used to evaluate the subjective and objective components of an excessive force claim shows Officers Warren and Lane are entitled to summary judgment.

> **a.     The Need to Exercise Force and the Threat Reasonably Perceived by Officers Warren and Lane**

Plaintiff left Officers Warren and Lane with no choice but to use force by refusing to comply with repeated directives to put his arms inside the cell door tray flap and exiting his cell without permission.  "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."  Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).  Courts within this circuit have consistently held

an inmate's refusal to remove his arm from a cell door tray flap constitutes a disturbance and risk to safety, justifying use of force.[3]  Therefore, it necessarily follows Plaintiff's unauthorized presence outside his cell constituted an even greater risk to safety, justifying use of force.  See, e.g., Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987) (finding defendant who "placed his riot baton against [plaintiff's] neck with some degree of force [and] pinned him against a wall" . . . "was justified to compel compliance with a valid order and to accomplish the security interest of putting [plaintiff] back into his cell."); Suggs v. Ingram, No. 5:19-CV-65-TES-CHW, 2020 WL 2529853, at *3 (M.D. Ga. Apr. 28, 2020) *adopted by*, Suggs v. Ingram, No. 5:19-CV-65-TES-CHW, 2020 WL 2530307 (M.D. Ga. May 18, 2020) (finding "clear need for the use of force" where plaintiff "physically resisted efforts to close his cell door . . . ."); Collins v. Sheppard, No.1:13-CV-31, 2014 WL 5432118 (M.D. Ga. Oct. 24, 2014) (finding use of force necessary where plaintiff refused to return to his cell).  Thus, Officers Warren and Lane were justified in utilizing force to eliminate the threat and secure Plaintiff in his cell.

### b. The Relationship Between the Need to Use Force and the Amount Applied

While Plaintiff claims Officers Warren and Lane punched, kicked, pepper sprayed and hit him with a flashlight, the medical records do not reflect injuries consistent with this description.  Even when these allegations are credited fully to Plaintiff at summary judgment,

---

[3]See Driver v. Novy, No. 6:15-CV-55, 2017 WL 2313005, at *3 (S.D. Ga. Mar. 22, 2017), *adopted by*, Driver v. Novy, No. 6:15-CV-55, 2017 WL 2312835 (S.D. Ga. May 26, 2017) (finding need to exercise force because "Plaintiff refused a direct command from Defendant to remove his arm from the tray flap."); Kelly v. Jones, No. 5:15-CV-0337-CAR-MSH, 2017 WL 2676422, at *3 (M.D. Ga. June 21, 2017) (holding inmate's refusal to remove his arm from tray flap constituted disturbance requiring use of force); Moore v. James, No. 7:09-CV-98 HL, 2013 WL 1296775, at *2 (M.D. Ga. Mar. 27, 2013) ("By not obeying direct orders, Plaintiff created a situation which justified the use of some force.").

the force was still insufficient to deter Plaintiff's disobedience.  Indeed, despite Officers Warren and Lane's repeated directives to place his arms in the cell door tray flap, Plaintiff not only failed to comply, but it is undisputed Plaintiff fully exited his cell.  Thus, Officers Warren and Lane's use of force was not excessive given Plaintiff's repeated refusal to comply with valid orders.

Instead, the force used was proportionate to the need to restore order and eliminate the risk Plaintiff posed by being out of his cell unrestrained and without permission.  See Miles v. Jackson, 757 F. App'x 828, 830 (11th Cir. 2018) (finding proportional force where officers tackled plaintiff on to bunk of his cell where plaintiff "not only failed to comply with [officer's] order to go further into the jail cell, but also evaded [officer's] attempt to get him to comply."); McClendon v. Dep't of Juv. Just., 701 F. App'x 771, 773 (11th Cir. 2017) (finding no constitutional violation where plaintiff suffered three crushed fingers, resulting in partial amputation of one finger where plaintiff "pushed open his cell door quickly and forcefully, as if he were attempting to escape his cell, and held it open as [officer] tried to close it."); see also Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008) (stating "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders.").

### c.    Extent of Injury and Any Efforts to Temper the Severity of a Forceful Response

Plaintiff suffered no significant injuries as a result of the encounter.  The medical record and video footage evidence as much.  Plaintiff suffered minor scrapes to his face and hip. While the "nature of the force rather than the extent of the injury" is the relevant inquiry, the extent of injury is still a "factor that may suggest whether the use of force could plausibly have

been thought necessary in a particular situation." <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 34, 37 (2010) (internal quotations and citation omitted). Here, the undisputed facts show this factor weighs heavily in favor of Defendants.

Plaintiff had minor abrasions on his face and hip following the use of force, and was prescribed a mild pain killer and antibiotic ointment to treat these injuries. Plaintiff has not requested or received any additional treatment for his injuries since February 27, 2020. Furthermore, Dr. Alston viewed Video 1 and testified there is no objective evidence Plaintiff was pepper sprayed and described the closeup of Plaintiff's forehead as exhibiting very minor skin abrasions. Although the Court must view all facts in the light most favorable to Plaintiff, the Court should accept a video's depiction of events instead of Plaintiff's where it "obviously contradicts Plaintiff's version of the facts . . . ." <u>Pourmoghani-Esfahani v. Gee</u>, 625 F.3d 1313, 1315 (11th Cir. 2010).

Concerning efforts to temper the severity of the forceful response, Officers Warren and Lane took less than one minute to secure Plaintiff in his cell, and neither officer continued to use force after Plaintiff had been secured. <u>See, e.g.</u>, <u>Sanks v. Williams</u>, 402 F. App'x 409, 412-13 (11th Cir. 2010) (finding no excessive force where defendant "ceased using force when it was no longer necessary to control [plaintiff].")); <u>Bell v. Lamb</u>, No. 6:17-CV-12, 2020 WL 1817320, at *6 (S.D. Ga. Mar. 6, 2020), *adopted by*, <u>Bell v. Lamb</u>, No. 6:17-CV-12, 2020 WL 1811650 (S.D. Ga. Apr. 8, 2020) (finding no excessive force where "[a]fter going to the ground, [d]efendant . . . did not kick, punch, or otherwise inflict intentional pain upon [p]laintiff."); <u>see also</u> <u>Harris v. Allison</u>, No. CV 14-1104 (RBW), 2016 WL 3166296, at *3 (D.D.C. June 6, 2016) (finding no excessive force where "[n]otably, after the defendant officers were ultimately able to restrain the plaintiff, no additional force was used.").

In addition, Officers Warren and Lane immediately notified their supervisor of the use of force and transported Plaintiff to the medical unit as soon as reasonably possible.  Medical personnel promptly evaluated Plaintiff, and Plaintiff did not seek or need additional treatment for his injuries.  These undisputed facts militate strongly against a finding of sadistic and malicious force.  See, e.g., Fennell v. Gilstrap, 559 F.3d 1212, 1220 (11th Cir. 2009) (*per curiam*) ("The immediate offer of medical assistance shows an effort to temper the severity of the use of force."); Cockrell, 510 F.3d at 1312 (finding immediate medical assistance tempered severity of forceful response and made it less likely defendants acted sadistically instead of in good faith); Moore v. James, No. 7:09-CV-98 HL, 2013 WL 1296775, at *3-4 (M.D. Ga. Mar. 27, 2013) (finding no excessive force where force used to gain plaintiff's compliance with verbal commands, and "after the incident was over, Plaintiff was immediately seen by medical personnel."); Howell, 2011 WL 3813291, at *21 (finding good faith effort to restore order where "officers immediately called the nurse to tend to [plaintiff]" after he was tased).

For all these reasons, the Court finds Officers Warren and Lane are entitled to summary judgment because the force used was necessary, reasonable, proportional to the need, and did not violate Plaintiff's Eighth Amendment rights.

### 3.   Defendants' Claims Regarding Immunity and Damages Are Moot

Defendants argue they are entitled to qualified immunity and Eleventh Amendment immunity, and even if a constitutional violation is found, Plaintiff is limited to recovery of nominal damages because his injuries are *de minimis*.  (Doc. no. 28-1, pp. 7, 12-13.)  Because Defendants are entitled to summary judgment on the substantive merits of Plaintiff's claims as discussed *supra*, the issues of immunity and damages are ultimately moot, and the Court will not address them.

13

## IV.      CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 28), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 17th day of June, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA